CASE 32—INDICTMENT—MARCH 29.

## Saylor v. Commonwealth.

APPEAL FROM HARLAN CIRCUIT COURT.

1. CONTINUANCE.—When the accused seeks a continuance on account of the absence of a material witness, in determining whether he has used due diligence to secure the attendance of the witness, the fact that the Commonwealth had the witness recognized to appear should have the same effect as if the witness had been recognized at the instance of the accused, and no further diligence is necessary to be shown.

2. HOMICIDE IN DEFENSE OF SELF AND FAMILY.—Upon the trial of appellant for murder, there being testimony tending to show that his dwelling was attacked by deceased with the intention of having carnal knowledge of his wife, or of carrying her away for that purpose, the court should have instructed the jury that if they believed from the evidence that at the time of the killing the accused believed and had reasonable grounds for believing that the deceased was then and there about to have carnal knowledge of the wife of the accused against his will, or was then and there about to abduct her, or by force or menace sought to induce her to leave her husband for carnal or other purposes, then the accused had the right to protect himself and wife from such wrong by any means or force necessary or apparently necessary to that end, even to the taking of life.

3. IMPEACHMENT OF DEFENDANT AS WITNESS.—When the accused

Saylor v. Commonwealth.

goes upon the witness stand to testify for himself, he may be
subjected to the same kind of cross-examination as any other
witness and be impeached as any other witness, but he can not
be compelled to give evidence against himself, except as to the
charge under consideration, and, therefore, can not be required
to admit the commission of other offenses which would subject
him to punishment, presentment or infamy.

4. EVIDENCE—CRIMINATING TESTIMONY.—Upon the trial of appel-
lant for the killing of one person he should not be compelled to
testify as to who killed certain other persons, not only because
he can not be required to give evidence against himself, but be-
cause such testimony is not relevant.

5. DYING DECLARATIONS.—Where it appears that the deceased made
a dying declaration which was reduced to writing and signed by
him, parol testimony as to his statement is not competent in
the absence of testimony to show that it is not within the power
of the Commonwealth to produce the writing. But where the
writing is produced and can not be admitted as evidence because
the statements are irrelevant, or it is otherwise inadmissible,
the court should admit parol testimony to prove the dying dec-
laration.

6. SAME.—The writing is the best evidence, although not sworn to.
It is sufficient if it is signed by the deceased.

N. B. HAYS, G. A. EVERSOLE, N. J. SAYLOR AND S. N. FRENCH
FOR APPELLANT.

1. The court erred in refusing a continuance. (Adair v. Cooper, 25
Texas, 548; Boone v. Hilton. (S. C.) Const., 198; Allcorn v. Raf-
ferty, 4 J. J. Mar., 220; Holmes v. Dobbins, 19 Ga., 630; Mont-
gomery v. Ins. Co., 18 La. Ann., 227.)

2. As the dying declarations of the deceased were reduced to writing,
the writing was the best evidence, and its absence not being ac-
counted for, it was error to admit parol testimony as to its con-
tents. (Greenleaf on Evidence, vol. 1, sec. 161; Roscoe's Crim-
inal Evidence, 35, 97; State v. Sullivan, 51 Iowa, 142; State v.
Tweedy, 11 Iowa, 350; Commonwealth v. Haney, 127 Mass., 435;
People v. Glenn, 10 Cal., 32; Collier v. State, 20 Ark., 36; State v.
Patterson, 45 Vt., 308; 1 Wharton's Am. Crim. Law, 5th and rev.
ed., p. 340, sec. 679; 47 Ohio St., 358; Greenleaf on Evidence, p.
231, sec. 161; Hines v. Commonwealth, 90 Ky., p. 64.)

3. Defendant was on trial for the killing of Shackleford alone, and
it was error to admit testimony as to the killing of other per-
sons, such testimony not being competent as a part of the *res*

*gestae.* (1 Bouvier's Law Dictionary, p. 614; 1 Greenleaf. on Evidence, sec. 108; Roscoe's Criminal Evidence, p. 79, note 1.)

4. The court erred in not giving the instructions asked by defendant.

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

Under the facts proved in this case, I am of the opinion that the instruction offered by defendant and refused by the court should have been given.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The appellant was indicted in the Harlan Circuit Court charged with the murder of Hiram Shackelford. He was tried, found guilty of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for a period of five years.

It is insisted that the judgment should be reversed because, (1) the court erred to his prejudice in overruling a motion for a continuance of the case; (2) the court erred in failing to properly instruct the jury and give to it the whole law of the case; (3) the court erred in allowing witnesses to prove the declaration of the deceased, which was claimed to be his dying declaration; (4) the court erred in compelling the accused to state on cross-examination that he had killed James and Lincoln Middleton.

To the several rulings of the court of which accused is complaining proper exceptions were taken.

We will consider the questions in the order stated.

The affidavit which the accused filed for a continuance disclosed fully the facts which the absent witness, Charles Parrott, would prove when given time to procure his attendance. No doubt can exist as to the relevancy and materiality of the evidence, and we deem it unnecessary to make a statement of the facts of the case together with the facts which the absent witness will prove, in order to

illustrate its importance to the accused to enable him to have a fair trial.

The only question is as to whether proper diligence was used to procure attendance of the witness.

The accused stated in his affidavit that the witness had been recognized at the instance of the Commonwealth to appear as a witness for her, at that term of the court, on the trial of the accused; that the witness had testified on examining trial of-accused for the Commonwealth; that the affiant had learned within the week preceding the date of filing the affidavit the witness would prove facts (fully stating them) which were not disclosed by the witness on the former trial; that since learning the absent witness would prove such facts, affiant had been confined in jail, his attorney upon whom he relied was living in another county, and he had no opportunity to procure the attendance of the witness. Aside from the fact that the Commonwealth had the absent witness recognized to appear and testify in her behalf at that term of the court against the accused in this case, we think the affidavit disclosed a state of facts which entitled the accused to a continuance.

When the Commonwealth has a witness recognized to appear at a term of the court and testify in her behalf it is not necessary for the accused to have such witness recognized to appear and testify for him or to have a subpoena issued for or served on him.

The Commonwealth having taken the necessary steps to procure the attendance of the witness, the accused has the right to rely upon the good faith of the Commonwealth and to expect the attendance of the witness.

In considering the question of diligence on a motion for a continuance by the accused on account of the absence of a

witness, the fact that the Commonwealth had such witness recognized should have the same effect as if he had been recognized at the instance of the accused.

So far as the court gave instructions to the jury, they were correct, as they were the instructions usually given in cases of homicide, but in view of the testimony of the defense the court did not give the entire law of the case to the jury.

The testimony adduced by the accused tends to prove that the deceased and others came to the house of the father-in-law of the accused where the accused and his wife were living, forced the kitchen door open and the deceased came in with a pistol in his hand, entered the room, looking all around, and discovering that the accused and his wife were in the loft, where they had gone to avoid the deceased and his party, endeavored to force them down in the room below. Failing in this then the deceased tried to get the accused to leave his wife and allow the deceased to go where she was in the loft. Another one of the party who accompanied the deceased uninvited, came to the loft where the accused and his wife were, and gave them to understand that they had better do as the deceased wanted them to do, intimating that it would be hazardous for them not to do so, saying that "they knew Hiram Shackelford and that they had better come down."

During this time the accused was advising the parties to go away. Failing to come down, the deceased fired a pistol through a crack into the loft and grazed the arm of the wife of the accused.

The proof also tends to prove that the deceased came to the house to get the wife of the accused and take her away with him; that on the day of the killing, and just before going there, the deceased had tried to hire a party to go to the house where the accused and his wife were and where the

killing took place and get the wife of the accused to come to the deceased.

The testimony tends to prove that the deceased attacked the dwelling, struck the kitchen door and forced it open, and entered with a weapon in his hand, and as the accused lived there he had the right to defend the dwelling, as the law regards an attack on it as equivalent to an assault upon his person, for a man's home is his castle. He had the right to use the force necessary to resist the attack, even to the taking of life.

If, then, one has the right to defend his castle even to the taking of life, how much greater and more sacred should be the right to protect and defend the person of his wife who is in the dwelling when the attack is made, not only from death or great bodily harm, but from any attempt to abduct her, or by force or menace induce her to leave her husband for carnal or other purposes?

To protect and defend the wife under such circumstances is not only the right but the duty of the husband, and in doing so he may use such force as is necessary or apparently necessary even unto the taking of life.

In addition to the instructions which were given the jury, the court should have told them that if they believe from the evidence, beyond a reasonable doubt, that the accused shot and killed the deceased, and they further believe at the time of the killing the accused believed and had reasonable ground for believing, that the deceased was then and there about to have carnal knowledge of the wife of the accused against his will, or was then and there about to abduct her or by force or menace sought to induce her to leave her husband for carnal or other purposes, then the accused had the right to protect himself and wife from such wrong by any means or force necessary or apparently necessary to that end,

even to the taking of life, and if the jury believe from the evidence, that the accused believed that he was then and there in immediate danger of such wrong or wrongs at the hands of the deceased, and that he shot and killed deceased to prevent such act, and that in so doing he used no other or greater force or means than were to him apparently necessary for that purpose, they should acquit the accused.

The accused became a witness in his own behalf, and after detailing what he claimed were the facts with reference to the killing of Hiram Shackelford, for whose killing alone he was being tried, the court compelled him to detail facts with reference to the killing of James and Lincoln Middleton, thus forcing the accused to admit that he had killed James and probably Lincoln Middleton. They were killed at the same place where Shackelford was killed and immediately afterward. To admit these facts certainly was calculated to influence the action of the jury in its consideration of the case on trial.

When the accused goes upon the witness stand to testify for himself he may be subjected to the same kind of cross-examination as he would be were he not a defendant. His testimony can be impeached in the same manner as that of any other witness. He is subject to the same rules and is not deprived of any of the privileges that belong to other witnesses. He goes upon the stand to admit or deny his guilt, or to give such facts as may excuse or mitigate the offense, or such as may convict him of the offense with which he is charged, as the facts which he discloses may establish. His testimony can only relate to the offense with which he stands charged.

It is a rule that a witness is not bound to answer any question which would tend to subject him to punishment, presentment or infamy. Under the bill of rights he can not

be compelled "to give evidence against himself," but when he becomes a witness for himself in a criminal prosecution he waives that right so far as the charge under investigation is concerned. The fact that he does so waive it does not give the Commonwealth the right to compel him to admit the commission of other offenses which would subject him to punishment, presentment or infamy.

If this was done it would be in utter disregard of the bill of rights, and in many instances deter persons accused of an offense from going on the stand as a witness for himself, as a forced confession of another offense might subject him to punishment far greater than the charge under investigation.

For another reason the accused should not be compelled to testify as to who killed James and Lincoln Middleton, as it is not relevant and is prejudicial to the rights of the accused in the trial of the indictment charging him with killing Hiram Shackelford.

The remaining question to be reviewed is as to the action of the court in allowing James Shackelford and Geo. Lee to tell what the deceased said as to how the difficulty and shooting occurred. Both witnesses proved that the deceased made a dying declaration which was reduced to writing and signed by him. Shackelford testified he did not remember all that was in the written statement and Lee that he did not remember but little it contained. Neither of them attempted to testify as to what it contained, neither were they asked to state what it contained, but were allowed to prove what the deceased had said as to how the killing occurred and that the statements were made by the deceased *in extremis*.

The Commonwealth did not account for the absence of the declarations of the deceased which had been reduced to

writing except that James Shackelford said "he brought same and delivered them to the grand jury and have never seen them since." There was no proof that the writing was lost or mislaid or was not in existence, nor in the power of the Commonwealth to produce it. In such a case did the Commonwealth have the right to prove dying declarations of the deceased? We think not. It was not the best evidence of which the case in its nature was susceptible. It is essential to the pure administration of justice that the best evidence should be produced.

The writing which contained the dying declaration was primary evidence. It afforded the greatest certainty of the facts in question. The Commonwealth should not be permitted to introduce the secondary evidence until it is shown that it is not within its power to produce the primary.

"If the declaration of the deceased, at the time of his making it, be reduced into writing, the written document must be given in evidence, and no parol testimony respecting its contents can be admitted; and if a declaration *in articulo mortis* be taken down in writing and signed by the party making it, the judge will neither receive a copy of the paper in evidence nor will he receive parol evidence of the declaration." (1 Wharton's Crim. Law, sec. 679.)

Russell on Crimes, vol. 2., p. 762, lays down the same doctrine.

In Hines v. Commonwealth, 90 Ky., 64 this court said: "It seems to us that when a dying declaration is made and reduced to writing and sworn to by the declarant, as in this instance, it, under the rule that the best evidence the case admits of must be produced, should, if within the power of the party, be produced."

It is not necessary that the writing should be sworn to by the deceased. If it is signed by him it is sufficient.

· The rule should be extended so if in any case when 'the writing produced as the dying declaration of the deceased can not be admitted as evidence because the statements are irrelevant or otherwise inadmissible, then the court should admit parol evidence to prove the dying declaration. If it is not within the power of the Commonwealth to produce the written dying declaration then parol evidence for the purpose is admissible.

We do not pass upon the other questions raised, for the case must be reversed for the reasons already given.

Judgment reversed with direction for further proceedings consistent with this opinion.