## Breckenridge v. Commonwealth.

(Decided September 25, 1917.)

### Appeal from Mason Circuit Court.

1.   Criminal Law—Continuance—Due Diligence.—In order to obtain
     a continuance or to have his affidavit read as the deposition of
     the absent witness, the defendant must himself take the neces-

sary steps to procure the attendance of such witness and cannot rely upon the fact that the Commonwealth has taken such steps.

2. Criminal Law—Evidence—Sufficiency.—On a prosecution for homicide evidence considered and held that defendant's guilt was a question for the jury.

3. Criminal Law—Instruction—Underscoring.—On a trial for homicide, the underscoring of the words "guilty of wilful murder" and "guilty of voluntary manslaughter" in the instructions held not sufficiently prejudicial to authorize a reversal.

4. Criminal Law—Homicide—Instruction.—On a trial for homicide, a self-defense instruction containing the words "and there appeared to the defendant, in the exercise of a reasonable judgment, no other safe means of avoiding," held not subject to complaint.

FRANK P. O'DONNELL and J. M. COLLINS for appellant.

CHARLES H. MORRIS, Attorney General, and D. M. HOWERTON, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The defendant, William Breckenridge, was convicted of manslaughter and given an indeterminate sentence in the penitentiary of from 5 to 15 years. He appeals.

Briefly stated, the facts are as follows:

The homicide occurred on the Louisville & Nashville railroad, near Marshall station, about 8 miles from Maysville, in the early part of May, 1915. It appears that several negroes were engaged in shooting craps. Among those present were Richard Robinson, Russell Turner, Adrial Jones, and the defendant. According to the testimony for the Commonwealth, Robinson and Turner had a difficulty and while they were fighting they each fell to the ground. At this point the defendant started to leave, but after going a short distance, returned to the scene of the difficulty. Thereupon, Bennett, the chief witness for the Commonwealth, says that he heard a pistol shot and on looking behind him saw the defendant and the deceased, Adrial Jones, with their pistols pointed at each other. The defendant then fired again and these were the only two shots that were fired. When the body of the deceased was discovered some time later, it was found that he had been shot twice with a 38-caliber pistol, once above the breast bone and once just below the shoulder, and from these wounds death resulted. When the defendant was arrested that night,

he turned over to the officer a 38-caliber pistol with two empty shells in it. Though admitting that he shot the deceased, he claims that he did it to protect himself. The defendant further admitted that Jones had won his money.

According to the defendant's evidence, the negroes came to his house for the purpose of getting a light. After some discussion and delay, he furnished them a torch. He did not take part in the crap game, but was a mere onlooker. The first difficulty that occurred was between Turner and Robinson over a pair of shoes. This difficulty was settled. Later on Jones and Robinson began a difficulty over 50 cents. Finally Turner took part in the same difficulty. Then Jones, Robinson and Turner all clinched and fell in a heap. Jones was the first man to get up. He then drew his pistol and shot at Robinson. At this point, someone said, "Adrial, don't you do that." Thereupon, Jones turned to the defendant, who was moving away, and said, "Breck, what have you got to do with it?" The defendant replied, "I haven't a God's thing to do with it." The deceased immediately pointed his pistol at the defendant and snapped it. The defendant then turned and shot the deceased.

1. The first ground urged for a reversal is the refusal of the trial court to grant the defendant a continuance or to permit his affidavit to be read as the deposition of the absent witness, Charles Coryell. The indictment was returned on December 31, 1915. The trial took place in the month of April, 1917. It appears from the affidavit that the witness was absent from the state and had been absent since the last term of the court. It further appears that he was originally recognized as a witness and that a subpoena was duly issued for him and placed in the hands of a proper officer for execution, and returned "not found," but it is clear from the record that this subpoena was not issued on behalf of the defendant, but on behalf of the Commonwealth. No rule of law is better settled than that the defendant is not entitled to a continuance on account of an absent witness or to have his affidavit for a continuance read as the deposition of such absent witness, unless he has used due diligence to procure attendance of such witness. McQuinn v. Commonwealth, 28 Ky. Law Rep. 20, 88 S. W. 1047. It is conceded that the defendant took no step whatever to procure attendance of the absent witness, but insisted that the action of the Commonwealth in hav-

ing the subpoena issued for such witness and returned "not found," was sufficient to dispense with the necessity for similar action on the part of the defendant. In support of this proposition, we are cited to the case of Saylor v. Commonwealth, 97 Ky. 184, where the court held, that the fact that the Commonwealth had the absent witness recognized to appear, would have the same effect as if the witness had been recognized at the instance of the accused, and no further diligence was necessary to be shown. After careful consideration, we conclude that the above rule is not sound and should no longer be followed. Though a particular witness be recognized or summoned to appear, the Commonwealth may conclude that his evidence is altogether unnecessary, and therefore notify him not to attend. This right of the Commonwealth to excuse its own witnesses should not be defeated by permitting the defendant to take advantage of their absence and either procure a continuance or have his affidavit read as their deposition. We therefore conclude that the defendant himself must take the necessary steps to procure the attendance of an absent witness and that he may not rely upon the fact that the Commonwealth has taken such steps. The case of Saylor v. Commonwealth, *supra*, to the extent that it announces a contrary doctrine, is hereby overruled.

2. The trial court did not err in refusing to give a peremptory instruction in favor of the defendant. The evidence for the Commonwealth shows that only two shots were fired, and these were fired by the defendant. While the defendant claims that the deceased first snapped his pistol at defendant, it was within the province of the jury to accept or reject this testimony and determine from all evidence in the case whether or not defendant acted in self-defense.

3. Instruction No. 1 is as follows:

"If the jury believe from the evidence beyond a reasonable doubt that the defendant, William Breckenridge, in this county on the ........................ day of ........................:........................ 1915, and before the finding of this indictment, willfully and feloniously and not in self-defense as defined in Instruction No. 3; shot and killed Adrial Jones, with a pistol loaded with powder and ball, or other hard substance, then they will find the defendant guilty: *Guilty of Wilful Murder,* if the shooting was done by defendant with malice aforethought; *Guilty of Voluntary Manslaughter,*

if the shooting was done by defendant.in sudden heat and passion or in sudden affray without previous malice."

The foregoing instruction is complained of because the words, "guilty of wilful murder" and "guilty of voluntary manslaughter" are underscored. It is argued that the instruction is prejudicial because it calls the attention of the jury to the particular circumstances under which they could find the defendant guilty either of murder or manslaughter, whereas in dealing with the question of self-defense, the words "acquit the defendant on the grounds of self-defense" in the third instruction, were not underscored. It is evident, we think, that the words in question were underscored, not for the purpose of emphasizing the necessity of defendant's conviction, but for the purpose of emphasizing the distinction between wilful murder and voluntary manslaughter, and we have no doubt, were so understood by the jury. While it is the better practice not to underscore any part of the instructions, we conclude that the underscoring of the words in question was not sufficiently prejudicial to the substantial rights of the defendant to authorize a reversal.

4. Lastly, it is insisted that the trial court erred in using the following language in the instruction on self-defense: "And there appeared to the defendant in the exercise of a reasonable judgment, no other safe means of avoiding, etc." Without entering into a discussion of the question, it is sufficient to say that instructions containing the same or similar language have often been approved and directed to be given by this court, and are not subject to complaint. Sizemore v. Commonwealth, 158 Ky. 492; Austin v. Commonwealth, 28 Ky. Law Rep. 1087; Coffman v. Commonwealth, 10 Bush 496; Holloway v. Commonwealth, 11 Bush 344; Munday v. Commonwealth, 81 Ky. 233; Cockrill v. Commonwealth, 95 Ky. 22.

Judgment affirmed.