## Saylor v. Commonwealth.

(Decided October 27, 1925.)

### Appeal from Leslie Circuit Court.

1. Homicide—Evidence in Murder Prosecution Held to Authorize Giving of Conspiracy Instruction to Jury.—In a prosecution for murder, where accused and his comrade were indicted jointly,

held that evidence warranted instruction on conspiracy, where it was shown that accused took comrade with him, both heavily armed, to the scene of the shooting for purpose evidently of securing reparation from deceased for taking accused's liquor.

2. Homicide—Terms "Willful," "Willfully," and "With Malice Aforethought," as Used in Approved Instructions to be Given on New Trial of Murder Case, Defined.—As used in approved instructions to be given on further prosecution of accused, jointly indicted with comrade for murder, the words "willful" and "willfully" mean intentional and not accidental, and the phrase "with malice aforethought" means a predetermination to do the act of killing without a legal excuse, it being immaterial at what time before the killing such determination was formed.

3. Homicide—Criminal Conspiracy Within Meaning of Word "Conspired," as Used in Approved Instructions to be Given on New Trial of Murder Case, Defined.—As used in approved instructions to be given on further prosecution of accused, jointly indicted with comrade for murder, a criminal conspiracy within the meaning of the word "conspired" is a corrupt combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means.

4. Homicide—Proper Instructions as to Willful Murder, Voluntary Manslaughter, Self-Defense, and Conspiracy Indicated.—On new trial of one jointly indicted with comrade for murder, what would be proper instructions as to willful murder, voluntary manslaughter, self-defense, and conspiracy indicated.

5. Homicide—Verbal Testimony as to Dying Declarations Not Erroneously Received, though Written Statement of Such Declarations was Produced but Not Read.—In a prosecution for murder, verbal testimony as to dying declarations of deceased, made while in extremis and in full realization of his condition, not erroneously received, although a written statement of such declarations, signed by deceased, was produced but not read.

LEWIS & LEWIS, J. B. MINIARD, C. K. CALVERT and W. H. LEWIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

John Saylor and Giles Saylor were jointly indicted, charged with the murder of Elhannon Collins. In a separate trial John Saylor was tried and found guilty of manslaughter and his punishment fixed at twenty-one years in the penitentiary. On this appeal the learned attorney general concedes that the judgment should be re-

versed on account of error in the instructions, and in so
doing it is deemed proper to recount the facts and indi-
cate our views upon such questions as are likely to occur
in another trial.

Appellant, a widower, and his small children live on
Rye Cove in Leslie county. Apparently he is a boot-
legger by occupation. On the evening of March 14, 1924,
he was visited by Elhannon Collins, Sam Colwell, Farmer
Colwell, Wilk Belcher and Jack Bailey. These parties
were traveling over the neighborhood and in the early
afternoon consumed a quart of liquor. Later they vis-
ited Sol Sullivan's and purchased another quart of whis-
key, which they drank. At Sullivan's they met appellant
and went with him to his home one-half mile distant, ar-
riving about an hour after sundown. Appellant fed their
horses and he and his little girl prepared supper for them
and the parties remained until about twelve o'clock.
Aside from this party there were at appellant's home
Giles Saylor, Jim Saylor and Lee Wilson. Some time
after supper appellant and Giles Saylor left the house,
telling their guests they would be back after a while.
However, the latter left before they returned.

Jack Bailey and Elhannon Collins carried away a
gallon or so of liquor belonging to appellant, several of
the party going to the home of Sam Colwell. Appellant
and Giles returned about twelve o'clock and, according
to Jim Saylor, defendant asked where the boys were, and
the children told him about Collins and Bailey getting
the liquor; he then procured his lantern and brought out
about one-half gallon of liquor and asked witness if he
had any cartridges for a pistol, saying, "He would make
Wilk Belcher and Elhannon Collins willing to pay for
the liquor that they took." He also requested Giles to
go with him, saying, "If you don't intend to stick, don't
go with me," and the two left carrying a pistol apiece and
a shot gun. The two Saylors then walked to Sam Col-
well's, a distance of two and one-half miles, arriving
before day, though those parties were up preparing
breakfast. Colwell's house consists of three rooms fac-
ing the road. They went to the center door and appellant
knocked. Mrs. Colwell answered him and told him to go
to the other door; at that door Sam Colwell met them
with a pistol in his hand, but invited them in, and they
went into the center room, where a fire was burning.

There were in that room, Sam Colwell, his wife Betty, Farmer Colwell, Jack Bailey and Eli Brock. At that time Elhannon Collins was in the kitchen, where Cordelia Saylor, a sister of Mrs. Colwell, was preparing breakfast. Upon their entrance into the middle room Sam Colwell went to the kitchen and told Elhannon Collins that John had arrived and was raising hell about his whiskey. Collins took out his pistol, broke it, examined the cartridges and snapped it together and either put it in his pocket or held it by his side. According to the further evidence for the Commonwealth, upon entering the middle room appellant took hold of Farmer Colwell, who said, "John, don't shoot me, I ain't done nothing." Appellant said, "Well, I am not going to shoot you, I am going to shoot Elhannon Collins." Jack Bailey said, "He is around here," whereupon John and Giles went to the kitchen; upon entering the kitchen appellant, with his pistol in one hand, took hold of Elhannon Collins with the other. Collins drew his pistol and the shooting began. Collins and Giles Saylor each had 38 caliber pistols and appellant a 32 caliber, the weight of the evidence being that the large caliber pistols were the first discharged.

The theory of the Commonwealth is that Giles Saylor fired the first shot; that after the exchange of four or five shots Elhannon Collins turned and Giles Saylor shot him in the back. He fell on his face and appellant then shot him several times in the back as he lay on the floor, where he was later found. Appellant was able to walk but badly wounded. Sam Colwell arrested and disarmed both defendants and carried them before a justice of the peace, to whom appellant said it was caused by deceased taking his liquor. Also he made a similar statement to a friend on a different occasion.

Appellant testified that he was paying suit to Miss Cordelia Saylor; that some time previous she had informed him that she was at the home of her sister's husband, Sam Colwell, and had written him that she was sick and would like to have some whiskey; that he was quite friendly with Sam Colwell and all of his party, and when visted by them had treated them hospitably; that Sam Colwell had invited him to go home with them and that upon leaving he had told them he would shortly return and go with them to Colwell's house, and such was his intention; that he was intending to visit the young

lady and he and Giles went for no other purpose; that he had told them to drink all the liquor they wanted and told Bailey to take what he wanted and he could pay him for it; he also was expecting Collins to pay for what he had taken; that Colwell met him at the door of his home with a pistol in his hand; that he had a pistol in his coat but did not draw it. He contradicts the Commonwealth's witnesses as to what occurred in the middle room and says that he started in the kitchen to see Cordelia, and as he entered was met by Collins with a pistol in his hand; that he told Collins he could pay for the liquor, but that Collins shot and he (witness) fell and what shooting he did was while he was lying on the floor.

Giles' testimony was along the same line; he admits going to the kitchen, but says he went there for the purpose of getting a drink of water; that Collins shot first, shooting at John, and that he shot in John's protection. Neither of them is able to account for the fact that Collins was shot four times, each of the bullets entering from the back.

The young lady admits having written to John and that they were good friends, though not sweethearts. She says, however, that the letter was written several weeks earlier; that she had seen appellant in the meantime and was not expecting a visit from him on this occasion.

Even upon appellant's theory, it was an unusual hour to pay a social call upon a young lady; and it is still more singular that in so doing he carried a comrade with him and that both went heavily armed. It does not appear that Giles was to assist in the courtship, hence there must have been some other motive for his going. Evidently he went at the request of appellant, and as there is evidence that the latter was incensed at the action of his guests in taking his liquor, and the language attributed to him indicates that he was bent on reparation, this, together with the proven threats and admissions and facts attending the homicide, was sufficient to authorize a conspiracy instruction.

As it is conceded that one of the instructions is prejudicially erroneous, and the others are somewhat confusing and sharply criticised, it is deemed best to lay down the instructions that will be given on another trial if the evidence is substantially the same as in this one, thus:

(1) As used in these instructions the words "will-ful" and "willfully" mean intentional, not accidental. The phrase, "with malice aforethought," means a pre-determination to do the act of killing without a legal ex-cuse, and it is immaterial at what time before the killing such determination was formed. A criminal conspiracy within the meaning of the word "conspired" is a corrupt combination of two or more persons to do an unlawful act or to do a lawful act by unlawful means.

(2) If you shall believe from the evidence beyond a reasonable doubt that the defendants, John Saylor and Giles Saylor, conspired and agreed with each other to kill and murder Elhannon Collins and that in pursuance and furtherance of such conspiracy and in execution thereof and while the same existed either one or both of the defendants above named did willfully shoot and kill Elhannon Collins in this county and before the finding of the indictment herein, then you ought to find the de-fendant, John Saylor, guilty of willful murder.

(3) If you do not believe from the evidence beyond a reasonable doubt that the state of facts as set out in instruction No. 2 existed, yet do believe from the evi-dence beyond a reasonable doubt that the defendant, John Saylor, in Leslie county and before the finding of the indictment herein, willfully shot and killed Elhannon Collins, not in the necessary self-defense of himself or of Giles Saylor, or if you believe from the evidence beyond a reasonable doubt that Giles Saylor, in this county and before the finding of the indictment herein, willfully shot and killed Elhannon Collins, not in the necessary or ap-parently necessary self-defense of himself or John Say-lor, and that John Saylor was then and there present and did willfully aid, abet, assist, encourage, advise or coun-sel the said Giles Saylor so to do, then you should find the defendant John Saylor guilty; that is, guilty of will-ful murder, if you shall believe from the evidence beyond a reasonable doubt that such shooting and killing of El-hannon Collins or such aiding or assisting was done with malice aforethought; but guilty of voluntary manslaugh-ter if you shall believe from the evidence beyond a rea-sonable doubt that such shooting and killing of Elhan-non Collins or such aiding and assisting was done in sud-den heat and passion or in sudden affray and without previous malice.

(4) If you find the defendant guilty of willful murder under either the second or third instruction you will fix his punishment at death or at confinement in the state penitentiary for life in your discretion according to the proof. If you find the defendant guilty of voluntary manslaughter you will fix his punishment at confinement in the state penitentiary for a period of not less than two nor more than twenty-one years in your discretion according to proof. If you find him not guilty you will say so and no more.

(5) If you believe from the evidence that no conspiracy existed, as defined in instruction No. 2, but do believe that at the time the defendant shot and killed Elhannon Collins, if he did so, or at the time he aided, encouraged, advised or assisted Giles Saylor to shoot and kill the deceased, if he did so, as defined in instruction No. 3, he believed and had reasonable grounds to believe that he or the said Giles Saylor was then and there in danger of death or the infliction of some great bodily harm at the hands of said Elhannon Collins, and it was necessary or believed by the defendant in the exercise of reasonable judgment to be necessary to shoot and kill the deceased, or to aid, advise, or assist Giles Saylor so to do in order to avert that danger, real or to the defendant apparent, then you should acquit the defendant upon the grounds of self-defense and apparent necessity therefor or the defense of another and apparent necessity therefor.

(6) But if you believe from the evidence beyond a reasonable doubt that the defendant, John Saylor, or his codefendant, Giles Saylor, first began the difficulty by shooting Elhannon Collins or making a demonstration to shoot him at a time when neither of them was in any danger, real or apparent, at the hands of Elhannon Collins, then you should not excuse the defendant on the grounds of self-defense or apparent necessity therefor or the defense of another or apparent necessity therefor, as defined in instruction No. 5.

(7) If you believe from the evidence beyond a reasonable doubt that John Saylor and Giles Saylor formed a conspiracy for the purpose of taking the life of Elhannon Collins and that in pursuance of such conspiracy and while it existed said defendants went to the place where they knew or believed Elhannon Collins would be, for the purpose of killing him, and did then and there willfully

kill him in execution of such conspiracy, or that under such circumstances and conditions either or both of them first commenced the difficulty by shooting or making a demonstration to shoot Elhannon Collins, you should not acquit defendant on the ground of self-defense or apparent necessity.

(8) If you shall have a reasonable doubt from the evidence of the defendant having been proven guilty, or if you believe from the evidence beyond a reasonable doubt that the defendant has been proven guilty, but entertain a reasonable doubt from the evidence as to whether his crime be willful murder or voluntary manslaughter as those defenses are defined in these instructions, then you ought to find him guilty of voluntary manslaughter and fix his punishment as provided therefor in instruction No. 4.

While *in extremis* and in full realization of his condition the deceased stated to several persons his version of the rencounter. This was written down and signed by him. On the trial several witnesses testified verbally as to his dying declaration and the written statement was produced but not read. This does not constitute error; though, if the defendant desired, he might have introduced it.

Our attention has been called to no other errors, and only the questions discussed are considered.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.