## Stanley v. Commonwealth.

Feb. 8, 1944.

C. A. Noble for appellant.

Eldon S. Dummit, Attorney General, and Blanche Mackey, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

Appellant, S. C. Stanley, was convicted of manslaughter for the killing of Hidge Smith on the night of December 12, 1942, between 6 and 7 o'clock P. M. His punishment was fixed at confinement in the Kentucky State Reformatory for a period of ten (10) years. He complains (1) that the verdict of the jury was excessive, and was the result of passion and prejudice; (2) that the court failed to give the whole law of the case in the instructions to the jury; and (3) that the court erred, to the prejudice of appellant's substantial rights, in the selection and formation of the jury.

On the evening Smith was killed, appellant and his brother, Jerome Stanley, attended a theater in Hazard, and about 5:45 o'clock P. M., they engaged Charlie Stacy to drive them to their home near Duane, in Perry County. They drove a short distance past appellant's home, and stopped at a filling station near the Tally Store, operated by brothers by the name of Ainni. Stacy suggested that they go to a restaurant operated by Martha Francis, to obtain something to eat. Appellant stated that he did not care for anything to eat, but invited his companions to his home to eat chicken and dumplings. His brother responded that he did not like chicken, and suggested that they go to the Tally Store, which they did. Stacy and Jerome bought some salami and went into the back room, where booths had been installed to accommodate the customers. The waiter directed them to a booth which was partially occupied by the deceased, Smith, and Roscoe Burton. Smith and Burton were sitting by the side of each other, facing the front of the room. Burton forbade Stacy and Jerome Stanley to sit in the booth. After an exchange of words, Jerome drew a pistol from his pocket and told Burton not to start anything. Burton then stepped out of the booth and permitted Stacy and Jerome to enter. At about that time Smith asked Jerome if he was looking for trouble, and the testimony for appellant shows that he drew a pistol from his pocket. The appellant heard the argument, and fired two shots which struck Smith, resulting in his

death. Appellant testified that he fired because it appeared to him that Smith was going to shoot his brother. All of the participants in the affray were sober, and the Stanleys and Stacy were not acquainted with either Smith or Burton. Apparently all were armed, as would seem to be the custom in the community. Jerome Stanley testified that he drew his pistol and pointed it at Burton, because the latter made an endeavor to draw his own pistol. Appellant's version of the affair was substantiated solely by his own testimony, but was submitted to the jury by the instruction hereinafter referred to, which stated in substance that, if appellant believed at the time he shot and killed Smith, his brother, Jerome, was in danger of his life or great bodily harm at the hands of Smith, he had the right to defend Jerome's life, even to the taking of the life of Smith. Since the jury was not required to accept appellant's version of the affray, it is apparent that the evidence was sufficient to sustain the finding of the jury, under all the circumstances related, and that the punishment inflicted was not excessive.

Instruction No. IV recites: "If you shall believe from the evidence that at the time the defendant, S. C. Stanley, shot Hidge Smith, he believed, and had reasonable grounds to believe, that he or Jerome Stanley or either of them, was then and there in danger of death, or the infliction of some great bodily harm at the hands of Hidge Smith or Roscoe Burton, or either of them, and that it was necessary or was believed by the defendant in the exercise of a reasonable judgment to be necessary to shoot the deceased, in order to avert that danger, real or to the defendant apparent, then you should acquit the defendant upon the grounds of self-defense or the defense of another, or apparent necessity.''

The objection to this instruction is that in the last clause the court did not specify Jerome Stanley as being the person the defendant was entitled to defend. This complaint is specious. The instruction specifically names Jerome Stanley as the person that the appellant must have had reasonable grounds to believe was in danger of death or great bodily harm, and the mere fact that the ground recited by the court as the basis for a verdict of acquittal did not name him, certainly could not have confused the minds of the jury in respect to the fact that Jerome was the only person other than him-

self appellant was entitled to defend. , The instruction substantially follows the one approved in Saylor v. Commonwealth, 210 Ky. 796, 276 S. W. 841, and Stanley on Instructions, Section 869, p. 1153, 1154. The instruction would have been proper had it closed with the words: "then you should acquit the defendant." The words following, viz., "upon the grounds of self-defense or the defense of another, or apparent necessity," are superfluous. The early part of the instruction succinctly sets forth the facts constituting the grounds upon which the defendant was entitled to an acquittal, and the recitation that the grounds were grounds of the defense of another, or apparent necessity, neither added to nor detracted from the substance of the instruction. We are of the opinion that it correctly recites the law applicable to self-defense and the defense of another. As a matter of fact, under the circumstances described in the evidence, the instruction was more favorable to the accused than one to which he was entitled. He did not claim, nor is it now contended, that he shot in defense of himself; nevertheless, the jury was permitted to pass upon that question in his favor.

The third complaint raises a question which has not heretofore been presented, to our knowledge, to this court. KRS 29.260 recites: "In felony cases the clerk, under the direction of the court, shall draw from the box twelve names, who shall compose the jury to try the case unless one or more of them are challenged, in which case the clerk shall draw from the box as many more as are required, and as often as required, until a jury is obtained or the whole panel is exhausted. A thirteenth juror may be drawn in felony cases as provided in Cr. C. 191."

Section 191 of the Criminal Code of Practice, as amended by Acts 1932 c. 60, reads as follows: "When an issue of fact in a criminal prosecution is about to be tried, the clerk shall draw, in the manner directed by the Kentucky Statutes, the names of twelve jurors, who, if not challenged by the parties, nor excused by the court, shall compose the trial jury; provided, that, at the sound discretion of the court, in all capital or other felony cases, a thirteenth juror may be selected and qualified and throughout the trial shall be treated as one of the jury, provided however that said thirteenth juror shall take no part in the deliberations or verdict of the jury except when one of the twelve has been excused by the

court upon some reasonable ground. The said thirteenth juror shall be selected and qualified as now provided by law for the other jurors, save that no additional peremptory challenges shall be allowed on account of the selection and qualification of such thirteenth juror.''

The selection of the jury was begun on Thursday morning, June 24, 1943. By noon twelve jurors had been accepted by the parties to try the case. In the exercise of his discretion, the trial judge authorized the selection of a thirteenth juror, as provided in Section 191, Criminal Code of Practice, supra. Court adjourned for the noon hour without the jury having been sworn. During the adjournment the attorneys representing the Commonwealth learned that the ninth juror selected was the son of a member of the regular panel, who had previously been peremptorily excused by the Commonwealth because her nephew was married to a sister of the accused. Upon the basis of this information, the Commonwealth moved the court to be permitted to further examine the ninth juror. This juror had no knowledge of the relationship, and so stated in answer to the questions propounded. The court overruled the motion of the Commonwealth that it be permitted to challenge the juror for cause, but since the Commonwealth had not exhausted its peremptory challenges, the court permitted it to use one of the latter in respect to the juror. This procedure was objected to, and exceptions taken to the ruling of the court. The court then directed the sheriff to summon seven bystanders, from whom the parties were directed to select a juror to substitute for the one excused. The defendant objected, and moved the court to discharge the entire panel and continue the case. This motion was overruled and exceptions duly recorded. The defendant did not move that the thirteenth juror be substituted for the excused juror, but now complains that the court erred in not setting aside the entire panel and continuing the case, and if wrong in that contention, that the court should have, on his own motion, substituted the thirteenth juror selected under the provisions of Section 191, Criminal Code of Practice, instead of substituting one drawn from the bystanders' list. We are of the opinion that the provision of the Code authorizing the selection of a thirteenth juror was enacted for the purpose of substitution after the jury is sworn and the trial has begun. When selected it is known by the parties the function, if any, he is to perform in the trial

of the case; and if, before the commencement of the trial, a juror who has already been selected but not sworn to try the issue is excused for any purpose, it is within the sound discretion of the court to select another juror in his stead, without disturbing the status of the juror selected to serve as the thirteenth member of the panel, especially when no motion is made specifically to substitute the thirteenth juror for the one excused. The defendant had three peremptory challenges remaining at the time he passed on the substitute juror. Undoubtedly, the court did not abuse its discretion in permitting the Commonwealth, before the swearing of the jury, to challenge the ninth juror selected on the basis of information it obtained after it had accepted the juror. The information it received was not known to the juror at the time of his examination, and he innocently qualified himself for jury service by incorrectly answering the questions propounded to him by the attorneys ·for the Commonwealth. We perceive no error prejudicial to the substantial rights of the defendant in the procedure above related. Because it is not presented, we refrain from commenting upon the right of the defendant to have the thirteenth juror substituted in like circumstances, had a specific motion been made to that effect.

The judgment is affirmed.