**Gerald LEWIS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 11, 1959.

Rehearing Denied March 25, 1960.

Lawrence S. Hail, Joe E. Caylor, Somerset, George Bertram, Campbellsville, for appellant.

Jo M. Ferguson, Atty. Gen., John B. Browning, Asst. Atty. Gen., for appellee.

WADDILL, Commissioner.

Appellant, Dr. Gerald Lewis, was indicted of wilful murder as denounced by KRS 435.040. He was accused of performing an illegal abortion upon Mrs. Katherine Dobbs which resulted in her death. Upon trial he was convicted of voluntary manslaughter and sentenced to prison for a term of two years.

Inasmuch as one of the several grounds urged for reversal is that the court erred in failing to direct a verdict of acquittal, it is appropriate at this point to review the proceedings to ascertain whether there is sufficient evidence to justify the submission of the case to the jury and to sustain appellant's conviction.

The decedent, Katherine Dobbs, who was 33 years of age at the time of her death, resided at Somerset with her husband and her two young sons. Fred Dobbs, the husband of Katherine Dobbs, was an employee of a railroad company and his work required him to be away from Somerset for extended periods of time. He testified that on June 1, 1958, when he left Somerset on a business trip, his wife was apparently "in perfect health." Four days later he was notified that his wife was ill, and soon thereafter learned that she had been hospitalized. He stated she remained under medical care and treatment until her death on September 16, 1958. He also stated that, shortly after he had visited his wife at the hospital and had learned of her condition, he went to Dr. Lewis' home where he was informed by Mrs. Lewis of the whereabouts of his wife's automobile and was given the keys to his wife's car. On this occasion after Mrs. Lewis had inquired how his wife was "getting along," she told him not to make any further telephone calls to the Lewis home. He further testified that on September 13, his wife told him she knew she had but a short time to live and she wanted him to know what had happened to her. She then related the details of her visits to Dr. Lewis' office and stated that on June 3, 1958, Dr. Lewis performed an abortion upon her. She also told him that following the operation she suffered severe pain in the lower part of her body and that she stayed in the Lewis home and received post-operative treatment from Dr. Lewis until June 6, when she was brought back to Somerset in an automobile which was owned and operated by Dr. Lewis' wife. The court permitted this evidence to be introduced as a dying declaration of Mrs. Dobbs. According to Dobbs, his wife's visits to Dr. Lewis were made without his knowledge or consent.

Dr. Morris Holtzclaw testified that he examined Mrs. Dobbs on the afternoon of June 6, 1958, and found her uterus was infected and her cervix was open and discharging a substance. which looked like placenta material. He stated that the condition of her womb indicated a rupture had been brought about by some type of instrumentation. Without reciting further details of Dr. Holtzclaw's findings, we think it is sufficient to relate that Dr. Holtzclaw stated it was his opinion that Mrs. Dobbs had undergone an operation to destroy pregnancy which had resulted in an incomplete abortion and infection within the uterus.

Dr. R. H. Weddle testified that he examined Mrs. Dobbs on or about the sixth of June and continued to treat her periodically until she died. He stated that during her illness Mrs. Dobbs would improve for short periods of time but she would relapse and her condition would become progressively worse. Dr. Weddle said it was his opinion that she developed "peritonitis from a septicemia of the female organs produced by a septic incomplete abortion" and that the "actual cause of her death was a chronic peritonitis, with a partial intestinal obstruction."

In addition to the foregoing evidence, there was testimony to the effect that, on June 6th, Mrs. Lewis had driven Mrs. Dobbs from Dr. Lewis' home in Mannsville to a certain place in Somerset where Mrs. Lewis procured a taxicab which furnished Mrs. Dobbs transportation the rest of the way to her home. This testimony demonstrates furtive conduct on the part of Mrs. Lewis and tends to support Mrs. Dobbs' statement that she had been confined as a patient in Dr. Lewis' home from June 3, to June 7, 1958.

Dr. Lewis testified that he examined Mrs. Dobbs on June 3, 1958. He stated his examination of her revealed "a pelvic abscess, infected tubes, infected womb, cervicitis and vaginitis." He said that Mrs. Dobbs was not pregnant and that he did not perform an abortion upon her. He testified that she was in his office for about 30 minutes and all he did was to examine her and prescribe a course of treatment. He attempted to explain the fact that he had possession of the keys to her car by claiming Mrs. Dobbs had told him her automobile wouldn't operate and that she had left the keys to her car with him. Dr. Lewis and his wife denied Mrs. Dobbs had stayed in their home and that Mrs. Lewis had driven Mrs. Dobbs to Somerset as claimed by the prosecution.

■ It is our view that the evidence was amply sufficient to take the case to the jury and to sustain the verdict rendered. See, Fitch v. Commonwealth, 291 Ky. 748, 165 S.W.2d 558.

■ Appellant contends that the testimony of Fred Dobbs concerning the dying declaration of his deceased wife was incompetent, and the objections thereto should have been sustained, because there was in existence a written statement about the abortion which had been signed and sworn to by Mrs. Dobbs. Appellant contends that the best evidence rule precludes the introduction of oral testimony to establish a dying declaration where there was in existence a written signed dying declaration. In support of this contention appellant relies upon Saylor v. Commonwealth, 97 Ky. 184, 30 S.W. 390, which undoubtedly sustains appellant's argument. However, in Stanifer v. Commonwealth, 214 Ky. 280, 283 S.W. 84, this Court apparently refused to follow the rule announced in Saylor (30 S.W. 390), because it was there held that oral testimony as to a dying declaration was competent even though a prior written dying declaration was in existence. Also, a similar conclusion was reached in Saylor v. Commonwealth, 210 Ky. 796, 276 S.W. 841. We have reconsidered the matter and have concluded to follow Stanifer (283 S.W. 84), which apparently refuses to apply the best evidence rule to dying declarations. See 26 Am.Jur., Homicide, Sec. 423, p. 448. To the extent that the rule enunciated in the Saylor case (30 S.W. 390) is in conflict

with our present pronouncement on this subject it will no longer be followed.

■ It is insisted that the court erred in permitting appellant to be cross-examined about a certain patient dying in his office. The record reflects that the court not only sustained objections to this line of questioning but also that the court admonished the jury not to consider testimony concerning any patient of appellant other than Katherine Dobbs in arriving at a verdict. The admonition of the court precluded any prejudicial effect that this type of interrogation could have caused.

■ Appellant urges that the court erred in sustaining objections to certain questions propounded to Dr. Lewis. Counsel for Dr. Lewis attempted to elicit an opinion from him as to the probable cause of the rupture of the womb of Mrs. Dobbs which Dr. Holtzclaw had testified that he had detected at the time he performed the operation upon her on June 10. Since Dr. Lewis had no personal knowledge of the condition of the patient at the time of Dr. Holtzclaw's examination, he could only give his expert opinion in answer to a hypothetical question which was framed upon all the relevant facts in the case as shown by the evidence which had been introduced. Instead of framing this hypothetical question based on all the facts, counsel for appellant attempted to elicit Dr. Lewis' expert opinion based upon a part of the testimony of one of the witnesses. The court properly sustained an objection to the above question. 20 Am. Jur., Evidence, Sec. 789; 26 Am.Jur., Homicide, Sec. 433. This would seem to be the rule in this jurisdiction. Brown v. Commonwealth, 14 Bush 398, 410; 82 A.L.R. at page 1472. Certain other questions asked Dr. Lewis were objectionable for the same reasons and the court did not err in this respect.

■ It is further insisted that the court erred in failing to instruct upon the whole law of the case and that instruction number 3 was prejudicially erroneous. Appellant argues that he was entitled to an instruction authorizing his acquittal if the jury believed that an intervening cause brought about the death of Mrs. Dobbs, independently of the wound. If the defense in this case had been in the nature of confession and avoidance there would have been some basis for this contention. In Wilson v. Commonwealth, 303 Ky. 219, 197 S.W.2d 240, we said that a concrete instruction is never warranted except where the accused admits the act and seeks to excuse or justify its commission so that the criminal element is extracted and legal responsibility avoided. In the instant case the appellant specifically denied performing an abortion upon Mrs. Dobbs or that he used any instrument or caused any wound upon her. Under this record the court instructed upon the whole law of the case. See, Stanley's Instructions to Juries, Vol. 3, Sec. 771, p. 430.

■ Further complaint is made that instruction number 3 was erroneously worded. The instruction identified as number 3 is patterned after an instruction given and approved in Clark v. Commonwealth, 111 Ky. 443, 63 S.W. 740. We find the instruction was legally sufficient because it correctly required the jury to find, before they could convict Dr. Lewis of the crime charged, that he had inflicted a wound upon Mrs. Dobbs while she was pregnant which resulted in her death.

■ It is finally insisted that the conduct of the special prosecutor was improper and prejudicial to the substantial rights of the appellant. It appears that he persisted in asking several witnesses improper questions during the course of the trial. However, the objections thereto were sustained and the court made it clear to the jury to disregard their implications in reaching a verdict. Under this state of the record we do not believe the improper conduct of the special prosecutor was prejudically erroneous. After a careful consideration of the case we have concluded that appellant received a fair trial.

Judgment affirmed.