207 So.2d 767·

**STATE of Louisiana**

**v.**

**Louis J. CHALAIRE.**

No. 48650.

Feb. 19, 1968.

Rehearing Denied March 25, 1968.

Alcide J. Weysham, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

SUMMERS, Justice.

Appellant Louis J. Chalaire was charged by bill of information with simple burglary of the apartment of Laura Curry in New Orleans on November 23, 1965. He was tried, found guilty and sentenced to serve 3½ years in the penitentiary.

For his defense Chalaire relied upon the combined plea of "not guilty and not guilty by reason of insanity." In this connection, the testimony of an expert medical witness, Dr. Richard L. Stone, was heard. The sole contention raised on this appeal is that the trial judge committed error in not permitting Dr. Richard L. Stone to be asked whether his diagnosis of Chalaire's mental condition coincided with the diagnosis of Dr. Pipes.

Dr. Stone, Chief of the Psychiatry Services at the Veterans Hospital in New Orleans, testified for the defendant. In response to questions by defense counsel, he answered that Chalaire first came to the hospital in March 1964. At that time, his chief complaint was back pain, although he gave a history of being nervous and restless. He was not found to have any "back condition", but he did have a rather severe nervous disorder manifested in his behavior which was somewhat erratic; and it was difficult to "contact" and talk to him. He was restless and showed little or no emotion. Medication was administered to treat this condition until August when he was discharged.

Dr. Stone's next contact with Chalaire was on May 26, 1965 when he was brought in by a coroner's pickup order. It was represented at that time that Chalaire was hav-

ing delusions and hallucinations and had threatened his wife. Again he did well on medication, and he was placed on trial visits beginning June 15. On October 15 he was again agitated in some way and returned to the hospital. Medications once again enabled him to settle down until he was released on October 26. He did not return to the hospital and was not seen by Dr. Stone until December 27, 1965. At various times thereafter Chalaire returned for treatment.

"Apparently," Dr. Stone testified, "he does well when taking medicine and not too well when he does not." When asked whether Chalaire was able to distinguish the difference between right and wrong when the crime occurred in November 1965, Doctor Stone stated that he could not say whether Chalaire could distinguish between right and wrong at a time when he did not see him. For, he asserted, there were times when Chalaire was unable to distinguish between right and wrong, but there were also many times when he was able to distingush between right and wrong.

At this point in the testimony, without laying the premise or predicate for the question, defense counsel asked Dr. Stone if he would agree with Dr. Pipes' diagnosis of Chalaire if he were told that the diagnosis showed the patient had schizophrenic reactions, mixed type, chronic, severe, with impartial remissions, and severe delusions of persecution, feelings of deep personal emotions, imperfect behavior and suicidal thoughts and ideas; whereupon the court sua sponte objected that the question was improper. The State's attorney later joined in the objection, which was sustained, and defense counsel reserved a bill of exceptions. After the verdict, this bill of exceptions was made the basis of a motion for a new trial. That motion was denied.

 We are of the opinion the rulings of the trial judge were correct. Generally, in Louisiana, according to our hearsay rule, a witness can testify only to facts within his knowledge, and he may not testify to any recital of facts heard by him, nor as to any impression or opinion that he may have. La.Code Crim.Proc. art. 463 (1928). Opinion testimony of expert witnesses is admissible, however, when questions involving a knowledge obtained only by means of special training or experience are at issue, provided the expert witness must state the facts upon which his opinion is based. La.Code Crim. Proc. art. 464, 465 (1928). Under these conditions an exception to the hearsay rule is permitted. But there is no authority to extend the exception and admit the opinion testimony of an expert based upon the opinion of another expert.

Dr. Pipes had not testified in the case, and there was no report in the record of the mental condition of Chalaire prepared by Dr. Pipes. Defense counsel's reference to Dr.

Pipes' opinion, therefore, without establishing as a fact that he had formed an opinion, or without laying a predicate showing the facts and circumstances upon which the opinion was based if it had been formed, would make any opinion expressed by Dr. Stone based upon that question extend far beyond the latitude allowed by Article 465 of the Code of Criminal Procedure (1928).

The question propounded to Dr. Stone was an effort to obtain an opinion from him based upon the opinion of another doctor. Although the opinion of Dr. Stone, based upon the facts of which he had knowledge, was properly admitted, an opinion formed by him based upon the opinion of another doctor was inadmissible. The authorities are in agreement that the opinion of an expert, however qualified, cannot be predicated upon the opinions and conclusions of others. Lewis v. Commonwealth, 332 S.W.2d 656 (Ky.1960); Watts v. State, 223 Md. 268, 164 A.2d 334 (1960); State v. David, 222 N.C. 242, 22 S.E.2d 633 (1942); State v. King, 158 S.C. 251, 155 S.E. 409 (1930); 2 Underhill's Criminal Evidence § 312 (5th ed. 1956); 2 Wharton's Criminal Evidence § 522 (12 ed. 1955); Green, Proof of Mental Incompetence and the Unexpressed Major Premise, 53 Yale L.Jo. 271, 282 (1953); 32 C.J.S. Evidence § 551; 20 Am. Jur. Evidence § 791.

For the reasons assigned, the conviction and sentence are affirmed.